Nott, Ch. J.,
delivered the opinion of the court:
The claimants concede that Antonio Sandoval, the deceased claimant, was born on Mexican territory, a citizen of Mexico. And it is established sufficiently for the purposes of this deci *416 sion that after the revolution of Texas and up to the time of the treaty of Guadelupe Hidalgo the part of Mexico lying-on the east side of the Rio Grande was inhabited by persons acknowledging allegiance to Mexico and not to Texas; that the center of population and the seat of government of the department or province of blew Mexico were both on the east side of the river; that the governor and civil officers of the department were all Mexicans; that the State of Texas was never in possession, actual or constructive, of any part of the territory; that the State never had a court or a taxgatheror actually within the department; that there never was an election for State officers, and that there never was a representative from the department or any portion of it in the Texan’ legislature. The question then is, By what means and at what time did the deceased claimant become a citizen of Texas?
The first reason assigned for this is that the- constitution of Texas made all inhabitants citizens of the Republic, and that the act of the Texas legislature, 19th December, 1836, fixed the western boundary of the State at the Rio Grande. But it is manifest that the State could not acquire territory by statute, and that it had no more legal right to declare- a part of the Mexican province of New Mexico a part of Texas than it had' a right to make a part of the State of Louisiana a part of Texas.
The next reason assigned is that by the treaty between the United States and Texas in 1836 the United States recognized the territory of Texas as extending westward to the sources of the Rio Grande. But Texas was then at war with Mexico, endeavoring to acquire a part of the territory within the Mexican province of New Mexico. The United States did not undertake to arbitrate between Mexico and Texas. All that the treaty did was to establish a boundary line between the territory possessed by Texas and the territory possessed by the-United States, and to concede that if Texas should conquer this portion of Mexico the river should be the future boundary between Texas and the United States.
The next reason assigned is that the United States recognized-the territory claimed by Texas, and that the courts of the United States must follow the action of the political branches of the Government. But the joint resolution for *417 annexing Texas, March 1,1845 (5 Stat. L., 797), does not sustain the reason. On the contrary, Congress seem to have carefully avoided doing so, and to have recognized the principle that Texas could not cede what it did not possess. All that the resolution says is “the territory properly inclmded within and rightfully belonging to the Republic of Texas may be erected into a new State to be called the State of Texas.” The question now presented to the court is whether this portion of New Mexico was, in 1845, “ territory properly included within and rightfully belonging to the Republic of Texas.” The joint resolution admitting the State to the Union, 29th December, 1845 (9 Stat. L., 108), reiterates the above language and designates no boundary. The act to extend the laws of the United States over the State of Texas, 29th December, 1845 (ib., p. 1), is equally silent as to boundaries.
The next reason assigned is that the United States asserted, after the annexation, that the Rio Grande, and not the Neuces, was the boundary of Texas, and declared war to maintain that right. But the intent of the United States did not necessarily extend beyond that portion of Texas which was then actually inhabited and possessed by Americans between the Neuces and the Rio Grande and which had been “properly included within and rightfully belonging to the Republic of Texas,” and, by virtue of those terms, ceded to the United States.
The next reason assigned is that by the Act 3d March, 181fl (9 Stat. L., 188, 194), a post route was established by Congress from a point within the United States (Independence, Mo.) to the town of Santa Fe, in New Mexico. - But New Mexico was then held by conquest, and had been for six months, ánd civil government had been established by the commanding officer of the United States, General Kearny, with the approval of the Secretary of War. It was necessary that the United States should have mail communication within the territory, which it then possessed by right of conquest, and this conquest was subsequently made permanent by the treaty of Guadalupe Hidalgo.
Moreover, the establishment of such a post route means nothing as a declaration that Santa Fe was in Texas, for the Act 3d M-rch, 1851 (9 Stat. L., 637, sec. 2), confers upon the *418 Postmaster-General power 4 4 to make suitable arrangements for transporting through any foreign country the mails of the United States, running from and to any point in the United States.” In other words, it authorizes a post route through a foreign country.
The next reason assigned is that the United States by the Act 9th May, 1850 (9 Stat. L., 446), paid to Texas $10,000,000 in consideration of the cession of all territory claimed by the State. But at that time the United States had acquired title to all of New Mexico by virtue of its right of conquest and the affirmance thereof by the treaty with Mexico. The United States and Texas were, therefore, asserting adverse titles against each other. The fact that the United States paid money to quiet title and to acquire a quitclaim from the State of Texas of lands to which Texas asserted a title can not.possibly affect, directly or indirectly, the prior citizenship of a person living within the disputed territory. The statute concedes nothing and declares nothing which the judicial branch of the Government can recognize as in any way affecting the question now in controversey.
With regard to the claim for pi'operty seized and taken by the defendant Indians after the claimant had become a citizen of the United States the court expresses no opinion.
It is ordered by the court that the defendant’s motion for a new trial, filed June 19, 1900, be allowed and a new trial granted.